**E-FILED on**   5/14/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COALITION FOR ICANN TRANSPARENCY INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., a Delaware corporation,<br><br>Defendant. | No. C-05-04826 RMW<br><br>ORDER GRANTING VERISIGN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>**[Re Docket No. 185]** |

Defendant VeriSign, Inc. ("VeriSign") moves to dismiss plaintiff's Second Amended Complaint ("SAC") for failure to state a claim. Plaintiff Coalition for ICANN Transparency, Inc. ("CFIT") opposes the motion. The court has read the moving and responding papers and considered counsels' arguments. For the reasons set forth below, the court GRANTS defendant VeriSign's motion to dismiss. Plaintiff's claims are dismissed with prejudice and judgment will be entered accordingly.

**I. BACKGROUND**

This action involves services related to the registration of Internet domain names. The factual allegations relevant to the present motions are set forth in this order. Additional factual

background is set forth in the court's February 28, 2006 Order Denying Verisign's Motion to Dismiss and Granting Defendants' Motions for Judgment on the Pleadings ("February 28, 2006 Order") and December 8, 2006 Order Granting Defendants' Motions to Dismiss ("December 8, 2006 Order").

### A.   The Parties

CFIT is a nonprofit membership corporation formed for the purpose of challenging the allegedly anticompetitive agreements and activities of VeriSign and ICANN as set forth in the SAC. SAC ¶¶ 13, 16. CFIT alleges that it receives financial support for this litigation from Internet domain registrars and back order service providers, including Pool.com, Inc., Momentous, Inc., and R. Lee Chambers Company, LLC. *Id.* ¶ 17. Further, its list of members "includes financial supporters as well as the names of domain name registrants, including but not limited to the World Association of Domain Name Developers ("WADND") . . . and other individuals and companies that, collectively, have registered tens of thousands of domain names in the .com and .net registries." *Id.* ¶ 19. Pool.com, Momentous, Inc., and R. Lee Chambers are allegedly domain name registrars, registrants, and back order service providers. *Id.* ¶¶ 312, 315-16.

VeriSign is a corporation currently serving as the sole registry operator for the .com and .net registries (which include all domain names ending in ".com" and ".net") pursuant to a contract with ICANN. *Id.* ¶¶ 32, 43. According to plaintiff's earlier complaint, ICANN is a private not-for-profit corporation that coordinates the Internet domain name system on behalf of the United States Department of Commerce. *See* FAC ¶¶ 58-59.

### B.   The Internet Domain Name System

A domain name is created when it is registered with the appropriate registry operator. SAC ¶¶ 44-45. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. *Id.* Effective November 1999, by contract between VeriSign and ICANN, registrants may not directly access the .com or .net registries, but instead must register domain names through any one of hundreds of private companies that act as domain name registrars. *Id.* ¶ 47. This requirement was allegedly for the purpose of bringing competition to the registration of domain names and was imposed by the United States government "under threat of antitrust prosecution and possible loss of

[the] contract." *Id.* ¶¶ 48, 50. Plaintiff alleges that this "registry-registrar split has been the key to maintaining competition in the registration for domain names and the provisioning of related domain name services." *Id.* ¶ 51.

### C. The Registry Operator Agreements

ICANN selects registry operators for various top level domain registries, such as the .com and .net registries by putting the agreements out for bid and selecting a registry on factors such as pricing and quality of services. *Id.* ¶ 58. Once a registry operator is selected, it serves as the sole registry operator for the applicable top level domain ("TLD") registry (.com or .net) until the expiration of the registry agreement. There can only be one registry operator at a time for each registry. *Id.* ¶ 61.

VeriSign's bid was selected over other bids for the .net registry in July 2005. *Id.* ¶ 60.[1] Thereafter, VeriSign and ICANN entered into a .net registry agreement (the "2005 .net Agreement") which included a provision that allowed ICANN to solicit competitive bids for the .net registry if a court or arbitrator issues a non-appealable final order finding VeriSign to be in breach of the agreement, which breach has not been cured. *Id.* ¶ 71. CFIT alleges this is an event that will never be triggered. *Id.* ¶ 226. Under the 2005 .net Agreement, the maximum price is set at $4.25, which includes the fee for the domain name registration and a $0.75 per transaction registry-level transaction fee that is paid to ICANN. *Id.* ¶ 237. After December 31, 2006, according to CFIT, "the price controls set forth in the [2005 .net Agreement] will be eliminated" and VeriSign will be free to impose monopoly pricing. *Id.* ¶¶ 236-37.

In 2006 ICANN and VeriSign amended their existing .com registry operator agreement to extend VeriSign's term as the registry operator of the .com registry (the "2006 .com Agreement"). This agreement was approved by the Department of Commerce and became effective on November 30, 2006. *Id.* ¶¶ 319-20. According to the Department of Commerce, its approval does not confer federal antitrust immunity on VeriSign with respect to the agreement. *Id.* ¶ 322. The 2006 .com Agreement similarly includes a provision that allows ICANN to solicit competitive bids for the .com

---

[1] VeriSign also served as the registry operator prior to that time.

ORDER GRANTING VERISIGN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. C-05-04826 RMW
SPT                                                                 3

registry if a court or arbitrator issues a non-appealable final order finding VeriSign to be in breach of the agreement, which breach has not been cured. *Id.* ¶ 72. As with its allegations regarding the 2005 .net Agreement, CFIT alleges this is an event that will never be triggered. *Id.* ¶ 226. The 2006 .com Agreement also sets a new maximum price for domain name registrations. *Id.* ¶ 197. In particular, the maximum price in the 2006 .com Agreement excludes the "registry-level transaction fee" (paid to ICANN), and the maximum price is set at $6.00 through December 31, 2006 but can be increased seven percent in four of the following six years.[2] *Id.* ¶ 232. CFIT asserts this is higher than the historical rate of inflation and is greater than what a fair market would otherwise bear. *Id.* Additionally, the increases to the registry-level transaction fee to ICANN are automatic such that registrars and Internet stakeholders have no input into prices. *Id.* ¶ 235. CFIT contends that VeriSign could and will raise prices to the maximum allowed under the 2006 .com Agreement. *Id.* ¶¶ 236, 238-40. Such increases in prices, CFIT alleges, will be passed on to consumers. *Id.* ¶ 242.

Further, CFIT asserts that VeriSign will increase prices above what it would charge if the agreements were subject to a competitive bidding process. *Id.* ¶ 241. Specifically, CFIT alleges that under a model in which the registry agreements would have been put out for bid upon expiration, "prices would have fallen[] to at least as low as $3.00 per name for similar levels and quality of service." *Id.* ¶ 243. Such lower .com prices at the registry level would have been passed on to consumers by registrars. *Id.* ¶ 245.

### D. Alleged Monopoly Leveraging

Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants. *Id.* ¶¶ 109-10. As such, registrars necessarily need access to the registry maintained by the registry operator. When a domain name is expiring (and not renewed by the current registrant), the registry operator notifies the registrars. To register an expired domain name, registrars send "add" commands to the registry database. *Id.* An "add" command is accepted

---

[2] The previous .net and .com agreements provided for a maximum price of $6.00 per year for registration of a domain name, which was paid to VeriSign as the registry operator, and a $0.25 "registry-level transaction fee," which was paid to ICANN. SAC ¶ 208. The registrar kept the portion of fees not remitted to VeriSign and ICANN. *Id.*

(thereby registering the name) only if the name is available. *Id.* Therefore, to increase the chances of obtaining a popular expired domain name, a registrar may send a rapid series of "add" commands for the expired name. *See* Feb. 28, 2006 Order at 3. CFIT alleges that due to competition for registration of expiring domain names, a registrant may use the services of "back order service providers." SAC ¶¶ 111-12. Back order service providers further increase the chances of a registrant obtaining a highly demanded expiring domain name by, in some instances, pooling the resources of several registrars. In this way, the registrant's chances of an "add" command being accepted increases. *See* Feb. 28, 2006 Order at 3-4.

CFIT alleges that there exists a competitive marketplace for obtaining expired domain names, namely through the services of back order service providers or registrars who also offer back order service provider services. SAC ¶¶ 111-18. These providers offer a variety of pricing and service levels. *Id.* ¶¶ 119-25. CFIT contends that there is a separate, relevant market for antitrust purposes for expiring domain name registration services based on the nature and value of expiring names. Specifically, it alleges that expiring domain names generally: (1) have been advertised by previous registrants, *id.* ¶ 137, (2) are associated with web sites that have been previously indexed by search engines, *id.*, (3) already have had visitors, links to, and traffic to the associated web sites, *id.* ¶ 138, and (4) were registered at a time when good, short domain names were less scarce, *id.* ¶ 139. As a result, CFIT submits, it would be easier for a new registrant to "monetize" the expiring domain name by associating advertisements and other services with the name. *Id.* ¶ 138. According to CFIT, "the average cost of an expiring domain name is multiples in excess of the average cost of a new domain name registration." *Id.* ¶ 142.

Under the 2006 .com Agreement ICANN may permit VeriSign to provide additional registry services if ICANN determines that no competition concern exists or "has refer[red] the issue to the appropriate governmental competition authority." *Id.* ¶¶ 247-48. CFIT concludes that VeriSign is therefore permitted to launch services, such as VeriSign's proposed Central Listing Service ("CLS") (previously referred to as the Wait List Service), that would "displace the competitive back order services market . . . or similar services." *Id.* ¶ 254. This will allow VeriSign to use its exclusive access to traffic data to the top level domain servers for its own commercial benefit. *Id.* ¶ 256.

1  Further, CFIT asserts that because "nothing in the contracts or otherwise will prevent VeriSign from
2  further increasing prices," consumers will pay more. *Id.* ¶ 111  The 2005 .net Agreement and the
3  2006 .com Agreement also allegedly abandon certain "Consensus Policies, contractual restrictions,
4  and competitive restraints that otherwise could limit VeriSign's freedom to exact monopoly profits."
5  *Id.* ¶¶ 246.

### E. Alleged Conspiracy to Monopolize

CFIT's allegation that there is a conspiracy to monopolize is premised on its allegation that the provisions in the 2005 .net and 2006 .com Agreements allow the purported unlawful monopolistic conduct and monopoly leveraging by Verisign.  CFIT alleges there is a conspiracy because VeriSign allegedly forced ICANN to accept the terms of the 2005 .net and 2006 .com Agreements by filing an oppressive and costly litigation, withholding funds from ICANN, and promising a "financial bailout and windfall of $12,000,000." *Id.* ¶ 271.  Moreover, CFIT asserts, VeriSign has been "relentless in its assault on ICANN's legitimacy and credibility" since ICANN was founded, including by lobbying against ICANN, paying bloggers to attack ICANN, planting news stories critical of ICANN, contributing to think tanks and organizations critical of ICANN, and threatening ICANN and its staff members with litigation, arbitration, government investigation, and personal financial liability. *Id.* ¶¶ 272-73.  VeriSign purportedly pledged in the 2006 .com Agreement to "cease the attacks on ICANN's credibility and legitimacy in exchange for ICANN's agreement to the conspiracy." *Id.* ¶ 276.

### F. CFIT's Claims for Relief

CFIT alleges claims for relief against VeriSign for (1) monopolization of the .com and .net registration markets in violation of section 2 of the Sherman Act, (2) attempted monopolization of the .com and .net registration markets in violation of section 2 of the Sherman Act, (3) attempted monopolization of the expiring names registration services market in violation of section 2 of the Sherman Act, (4) conspiracy to monopolize as to "all relevant markets" in violation of section 2 of the Sherman Act, (5) conspiracy in restraint of trade as to "all relevant markets" in violation of section 1 of the Sherman Act and (6) conspiracy in restraint on trade as to "all relevant markets" in violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.*

*United States District Court*
*For the Northern District of California*

The February 28, 2006 Order granted defendants' motions for judgment on the pleadings because CFIT's complaint did not adequately allege facts supporting CFIT's associational standing to file the present action. Feb. 28, 2006 Order at 14. The Feb. 28, 2006 Order also clarified certain pleading issues with respect to CFIT's antitrust allegations. In particular, the court noted that the amended complaint should differentiate the alleged expiring names registration services market from domain names in general and provide detailed allegations tending to show that registered and unregistered domain names are not reasonably interchangeable. Feb. 28, 2006 Order at 17. Similarly, the December 8, 2006 Order found that plaintiff did not allege that the expiring domain names services market is a separate relevant market, did not allege associational standing as to the domain names registration services market, did not allege antitrust injury, and did not allege a conspiracy to either monopolize or to engage in restraint on trade.

VeriSign now seeks to dismiss CFIT's SAC without leave to amend. Interestingly, CFIT *fails to cite a single case* supporting its antitrust theories in its opposition to VeriSign's motion.

## II. ANALYSIS

### A.     Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). A court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

### B.     Antitrust Standing—Relevant Market

VeriSign first argues that CFIT has no antitrust standing because (1) it has not alleged that a separate market exists for the expiring domain names for purposes of pleading antitrust injury, and (2) it has failed to allege associational standing as to the domain names registration market. A plaintiff must allege a relevant product and geographic market to state a claim under sections 1 and 2 of the Sherman Act. A market consists of all "commodities reasonably interchangeable by consumers for the same purposes[.]" *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). "If consumers view the products as substitutes, the products are part of the same market." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995). "In economists' terms, two products or services are reasonably interchangeable where there is sufficient cross-elasticity of demand. Cross-elasticity of demand exists if consumers would respond to a slight increase in the price of one product by switching to another product." *Todd v. Exxon Corp.*, 275 F.3d 191, 201-02 (2d Cir. 2001).

CFIT argues that there exists a separate relevant market for the registration services of expired domain names. This court has previously noted that *Weber v. Nat'l Football League*, 112 F. Supp. 2d 667 (N.D. Ohio 2000) and *Smith v. Network Solutions, Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001), have rejected the market definition of expiring names registration services as a matter of law. *See* Feb. 28, 2006 Order at 16-17; Dec. 8, 2006 Order at 11-12. Nevertheless, the court noted it was at least theoretically possible that CFIT could allege facts tending to show that registered and unregistered domain names are not reasonably interchangeable. *See id.* In its SAC, CFIT alleges that (1) back order service providers offer a variety of pricing options for registering of expired domain names, SAC ¶¶ 119-25, (2) expiring domain names become available for a variety of reasons, *id.* ¶¶ 132-35, and (3) expiring domain names have more value than new names, *id.* ¶¶ 137-42.

VeriSign argues that these allegations do not explain why expired domain names are not interchangeable with currently registered domain names that may become available or new domain names. The court agrees. The fact that there exists several pricing options to register expired domain names only suggests that *some* expired domain names may be in greater demand than others

such that a registrant might be willing to pay an additional fee in order to increase its chances of procuring that domain name. This does not mean expired domain names are not interchangeable with other domain names. Similarly, both expired domain names and currently registered domain names may have a traffic history, may have been advertised, or may have been indexed by search engines. Finally, the alleged variety of ways in which expired names become available supports only that some expired names may be in greater demand than others.[3] In other words, the mere fact that a domain name was formerly owned by a registrant who has now died or become disinterested in owning it, *see id.* ¶ 132, or that a domain name formerly belonged to a business that has now failed, *see id.* ¶ 133, or that a domain name was formerly used for a now ended promotion or product line, *see id.* ¶ 135, does not indicate that expired domain names are not interchangeable with currently registered domain names or new domain names.[4] In fact, logic suggests that a registrant who is no longer interested in its currently registered domain name will sell it, if it has value, rather than merely let it expire. Therefore, the court does not find that the allegations support a conclusion that the alleged expiring domain names registration services market is a separate relevant market, i.e. that expired domain names are not interchangeable with existing and new domain names.

### C. Associational Standing

This court previously concluded that CFIT has adequately alleged that at least the .com and .net domain name registration markets constitute relevant markets. *See* Dec. 8, 2006 Order at 14:9-10. VeriSign argues, however, that CFIT has again failed to adequately allege it has associational standing as to the purported domain name registration markets. The court previously concluded that CFIT's allegations were insufficient to establish associational standing as to the purported domain names registration market because it did not allege any members are competing registry operators or registrars. *See* Dec. 8, 2006 Order at 14 n.6. An association may invoke the doctrine of "associational standing" to bring a complaint "on behalf of its members." *See New York State Club*

---

[3] Conversely, some expired domain names may be of less value, for example, if a domain name was previously associated with a failed business, *see* SAC ¶ 133.

[4] As the court has noted before, registration of a domain name, whether new or expired, is completed through the same process with a registrar and that registrants register expired names with or without the use of a back order service provider.

*Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988).  It may do so if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Here, CFIT alleges that its members include Pool.com, Inc., Momentous, Inc., and R. Lee Chambers Company, LLC, SAC ¶ 17, each of which is allegedly a domain name registrar, registrant, and back order service provider, *id.* ¶¶ 312, 315-16.  VeriSign argues that neither Pool.com nor Momentous, Inc. is listed as an ICANN-accredited registrar; however, there is no dispute that R. Lee Chambers Company, LLC is listed as an ICANN-accredited registrar, including for the .com and .net domain names.[5]  VeriSign further argues that the complaint provides no factual information regarding R. Lee Chambers other than that it is a registrar and back order service provider.  However, the SAC alleges the functions of registrars and back order service providers and alleges that R. Lee Chambers is both a registrar and a back order service provider.  The court concludes this is sufficient to allege associational standing under *Hunt* as to the domain names registration market for .com and .net domain names.  *See Hunt*, 432 U.S. at 342 ("The association must allege that its members, *or anyone of them*, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.") (emphasis added).  The court turns next to the question of whether CFIT has alleged antitrust injury as to the domain names registration markets for .com and .net registrations.[6]

### D. Antitrust Injury

VeriSign argues that CFIT cannot establish antitrust standing because the alleged injuries are not the type of injuries that antitrust laws are intended to prevent.  Sherman Act § 2 states: "[e]very

---

[5] VeriSign requests the court take judicial notice of the list of ICANN-accredited registrars available on the world wide web at http://www.icann.org/registrars/accredited-list.html.  CFIT does not oppose.  The court grants this request pursuant to Fed. R. Evid. 201.

[6] Because the court has concluded that CFIT has failed to allege that the market for expiring domain name registration services is a separate relevant market, the court does not reach VeriSign's argument that CFIT has failed to allege antitrust injury as to the alleged expiring domain name registration services market.

person who shall monopolize, or attempt to monopolize, or combine or conspire with any person or persons, to monopolize trade shall be guilty" of an antitrust violation. 15 U.S.C. § 2.  To establish a § 2 violation for monopolization of trade, the plaintiff must show monopoly power and "the acquisition or perpetuation of this power by illegitimate 'predatory' practices." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 542 (9th Cir. 1991).  To establish a § 2 violation for attempted monopolization, the plaintiff must show "specific intent to control prices or destroy competition, predatory or anticompetitive conduct directed at accomplishing that purpose, dangerous probability of achieving monopoly power, and causal antitrust injury." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).  To properly allege a conspiracy to monopolize in violation of § 2, a plaintiff must establish: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (citing *United States v. Yellow Cab Co.*, 332 U.S. 218, 224-225 (1947)).  Finally, to establish a conspiracy in restraint of trade under § 1 of the Sherman Act, there must be a showing of specific intent or awareness as to one or more of the alleged co-conspirators.  *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1001 (9th Cir. 1986).

CFIT must plead facts establishing injury to competition in the market for the registration of the .net or .com domain names in general.  *See* 15 U.S.C. § 1.  CFIT asserts that there are two types of antitrust injury at issue.  First, CFIT again alleges antitrust violations based on the renewal and pricing revisions to the 2005 .net and 2006 .com Agreements.  Second, CFIT alleges that the 2006 .com Agreement allows VeriSign to improperly leverage its monopoly over the .com and .net registries to provide its CLS product for registration of expired domain names.

### 1. Renewal and Pricing Provisions

As to pricing and the renewal provisions, CFIT's allegations do not differ materially from those in its first amended complaint.  First, it alleges that the renewal provisions in the Agreements permit VeriSign to extract supracompetitive prices by removing the threat of future competitive bidding.  As discussed in this court's December 8, 2006 Order, the renewal provisions (1) extend the term of VeriSign's designation as the registry operator for the .com registry under the 2001 .com

Agreement, and (2) permits ICANN to terminate the agreement under certain circumstances including, *inter alia*, VeriSign's breach of the maximum allowable prices and price increases. Dec. 8, 2006 Order 16:11-21. As this court held in rejecting CFIT's similar argument in its opposition to defendant's motion to dismiss the first amended complaint, the agreements contemplate that competitive bids can be solicited in the event VeriSign is deemed to be in material breach of the registry agreement. The new agreements merely transfer the decision of whether VeriSign is in material breach to a court or arbitrator.

Moreover, although CFIT now alleges these provisions are illusory and that it is known by both VeriSign and ICANN to be illusory, such allegations are conclusory and speculative. Similarly, CFIT's allegations that the provisions were obtained as a result of VeriSign's oppressive litigation, financial pressure, and other threatening conduct toward ICANN are conclusory and do not make VeriSign's agreements with ICANN violative of antitrust law. *See Professional Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 61 (1993) (even if litigation is baseless,[7] plaintiff must show still prove a substantive antitrust violation); *Brillhart v. Mutual Medical Ins., Inc.*, 768 F.2d 196, 200-01 (7th Cir. 1985) (aggressive and competitive behavior to get best price is not antitrust violation). CFIT has cited no case holding that oppressive litigation, financial pressure or other similar conduct results in an antitrust violation. CFIT's conclusory allegations do not show that VeriSign was not lawfully selected to be the registry operator for the .com and .net registries. The parties do not dispute that there can only be one registry operator at a time. As this court has noted before, mere extension of VeriSign's lawful appointment as the sole registry operator does not constitute an antitrust violation. Dec. 8, 2006 Order at 16:3-5.

Next, CFIT's arguments that VeriSign intends to raise prices to the maximum allowed under the 2006 .com Agreement, and to unrestrained heights under the 2005 .net Agreement once the price controls therein expire, without more, do not state antitrust injuries. As this court previously held in addressing this same argument, increases in prices by a lawful monopolist, without more, do not subject one to antitrust liability. *See Alaska Airlines, Inc.*, 948 F.2d at 548-49 ("Government

---

[7] CFIT alleges that the litigation was "oppressive and costly"; not that it was baseless. SAC ¶ 271.

regulation, as opposed to treble damages and criminal liability under the Sherman Act, is generally thought to be the appropriate remedy for the difficulties posed by natural monopolies."). Further, the setting of maximum prices is not necessarily precluded by antitrust laws and has been found to be pro-competitive in some instances. *See, e.g., Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 n.13 (1990). In its SAC, CFIT adds the allegation that were the 2006 .com Agreement put out to bid, the cost would have fallen to at least $3.00 per domain name with at least the same level and quality of services compared to the current $6.00 per domain name charged by VeriSign. *See* SAC ¶ 233. Therefore, CFIT argues, VeriSign's prices are supracompetitive and serves as barriers to entry. CFIT pleads no factual basis for its conclusion that pricing would be at $3.00 had there been a competitive bid for the 2006 .com Agreement.[8, 9] Further, there are no allegations that the maximum prices, if imposed, would have anticompetitive effects. The court thus concludes that there has been no showing that the setting of maximum prices, even if higher than those allowed in the superseded agreement, are the result of predatory conduct or have caused antitrust injury.

Finally, although CFIT alludes to a conspiracy throughout its SAC and alleges that VeriSign and ICANN both knew that the provision that would allow for competitive rebidding of the agreement is illusory and that VeriSign would raise prices to the maximum allowable under the agreements, CFIT provides no factual basis for these speculative allegations. Consequently, CFIT's allegations are insufficient to support a conclusion that VeriSign has engaged predatory conduct, imposed supracompetitive prices, or demonstrated a specific intent to monopolize.

### 2. CLS Product

CFIT asserts that VeriSign has leveraged and threatens to leverage its monopolies in the registry operator market for the .com and .net registries to adjacent and downstream markets in restraint of trade. CFIT alleges that the unlawful conduct stems from VeriSign's intent to implement CLS which will eliminate the current competitive marketplace for back order services. SAC ¶¶

---

[8] As to the 2005 .net Agreement, CFIT continues to allege that the 2005 .net Agreement was a product of competitive bidding.

[9] Plaintiff claimed at oral argument that others have claimed that they would have provided the same services for less. This claim means little by itself and does not mean that VeriSign gained its position by predatory conduct or that its prices, by themselves, show antitrust violations.

146-54, 254. In particular, CFIT contends that VeriSign's launch of such services would eliminate competition because of VeriSign's exclusive access, as registry operator, to the traffic data of Internet users' attempts to visit unregistered domain names. *Id.* ¶ 255.[10] CFIT alleges that allowing VeriSign to offer CLS eliminates the "registry-registrar" division that was put into place in 1999 pursuant to negotiations between the United States government and Network Solutions, Inc., VeriSign's predecessor company, due to antitrust concerns. *Id.* ¶¶ 185-87. Instead of there being a competitive market comprised of different back orders service providers with various product offerings for the registration of expired domain names, CFIT alleges that all registrars will simply be resellers of VeriSign's "single, undifferentiated service" for registration of domain names, including expired names. *See id.* ¶ 146. While these allegations may show harm to the current back order service providers who offer various pricing models and methods for a registrant to obtain an expiring domain name, they are insufficient to show harm to competition. Even if VeriSign implements CLS, registrants can only register domain names (expired or not) through registrars. The price paid by the registrant, as well as the winning bid, are determined through market forces via an auction.

CFIT appears to assert that there is harm to competition because VeriSign will earn a fee for expired domain name registrations through its offering of the CLS product, whereas previously no fee was paid to VeriSign for such registration. SAC ¶ 149. Such fee would be earned by virtue of VeriSign leveraging its current monopoly over the .com and .net registries. *Id.* ¶ 154. CFIT contends that (1) there will be an increase in price to the consumer for expiring domain names, *id.* ¶ 150, (2) a significant percentage of the "participants" in the market for expiring domain names will be "priced out" of such market, *id.* ¶ 151, (3) services for expiring domain names will be less beneficial to consumers, *id.* ¶ 154, and (4) registrars and back order service providers will be harmed

---

[10] Given how CLS will allegedly work, *see* SAC ¶ 261, it is unclear how VeriSign's exclusive access to traffic for expired names would eliminate (or harm) competition. Notably, under the current process and under CLS, VeriSign, as the registry operator of the .com registry, is the first to become aware of the expired status of a domain name. It then notifies all registrars of such domain name's status. The main difference with CLS is that VeriSign thereafter holds a five-day auction, that is open to participation by accredited registrars, at which time the domain name may be sold to the highest bidder with ten percent of the sales price going to VeriSign as a fee.

ORDER GRANTING VERISIGN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. C-05-04826 RMW
SPT                                                                14

because some of the services they currently offer will be displaced, their customer relationships will be impaired because of the inability to provide certain services, and their revenues will be lower, *id.* ¶ 317.

As alleged, currently, when a domain name expires (and the grace period during which the current registrant may renew the name has passed), VeriSign releases the name to all registrars and customers may register the expired domain name through a registrar, with or without the assistance of a back order service provider. *Id.* ¶ 260. With CLS, VeriSign will notify all registrars who have signed a CLS agreement of an expired domain name and then hold a five-day auction for the name. *Id.* ¶ 261. Registrants may bid for the expired domain names through registrars and the domain name goes to the highest bidder. *Id.* If there are no bids, the name is released and can be registered in the same manner as any other unregistered domain names. *Id.* If there is a successful bid, the registrant pays the amount bid. *Id.* The registrar keeps ninety percent of the bid as its fee and VeriSign receives ten percent of the bid amount as its fee. *Id.* These allegations, taken together and viewed in the light most favorable to CFIT, fail to support CFIT's contention that consumers will be subjected to higher prices or less beneficial services, let alone demonstrate predatory conduct, supracompetitive pricing, or other harm to competition. As this court previously concluded, the inference is that an auction, open to all registrars and registrants, would result in the registration of expired names at a price determined by market forces. The fact that VeriSign will receive a percentage of the winning bid does not support a finding of antitrust injury to consumers. The alleged harm to back order service providers is not sufficient to show predatory conduct on VeriSign's part. *See Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 783 F.2d 1347, 1350 (9th Cir. 1986) ("A plaintiff has the burden to plead and prove that the defendant's actions harmed competition, not that the actions harmed plaintiff in its capacity as a competitor.").

### E. Leave to Amend

Defendant argues that the SAC should be dismissed with prejudice. Plaintiff orally sought additional leave if the court found its SAC deficient. Fed. R. Civ. P. 15(a)'s edict that "leave shall be freely given when justice so requires" is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health*

ORDER GRANTING VERISIGN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
No. C-05-04826 RMW
SPT                                              15

*Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations omitted)).  However, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  Defendant argues that despite opportunities to amend its initial complaint and its first amended complaint, plaintiff has failed to address the pleading deficiencies noted in the court's prior orders.  In particular, defendant contends that CFIT has added little additional factual allegations and that much of the additional allegations are conclusory or not substantive.  Defendant has also previously noted that two of the named members of CFIT, Pool.com and Chambers, have previously brought similar actions without success.

The court finds that further amendment would be futile.  The court's February 28, 2006 and December 8, 2006 Orders noted many of the same deficiencies in plaintiff's allegations.  After two separate opportunities to correct many of the same inadequate allegations, CFIT has failed to do so.  Moreover, much of CFIT's added allegations in its SAC are conclusory (or even speculative) and without supporting factual allegations.  The remaining additional allegations essentially re-allege the same facts the court had previously concluded were not sufficient to give rise to a showing of antitrust injury.  Plaintiff has cited no case law supporting its claims.  For these reasons, the court concludes that further amendment would be futile.  Accordingly, plaintiff's claims are dismissed without leave to amend.

### III.  ORDER

For the foregoing reasons, the court GRANTS defendant VeriSign's motion to dismiss. Plaintiff's claims are dismissed with prejudice and judgment will be entered accordingly.

DATED:     5/11/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Bret Alan Fausett		bfausett@cckllp.com

**Counsel for Defendants:**

Laurence J. Hutt		laurence_hutt@aporter.com
James S. Blackburn		james_blackburn@aporter.com
Courtney Schaberg		cmschaberg@jonesday.com
Eric Patrick Enson		epenson@jonesday.com
Jason C. Murray		jcmurray@jonesday.com
Jeffrey A. LeVee		jlevee@jonesday.com
Sean William Jaquez		swjaquez@jonesday.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     5/14/07				    SPT
						**Chambers of Judge Whyte**