PATRICK A. CATHCART (CA Bar No. 65413)
pcathcart@AlvardoSmith.com
BRET A. FAUSETT (CA Bar No. 139420)
bfausett@AlvaradoSmith.com
REGINALD ROBERTS, JR. (CA Bar No. 216249)
rroberts@AlvaradoSmith.com
ALVARADOSMITH
A Professional Corporation
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel.    (213) 229-2400
Fax.    (213) 229-2499

Attorneys for Plaintiff
COALITION FOR ICANN TRANSPARENCY INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| COALITION FOR ICANN TRANSPARENCY INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 05-4826 (RMW) PVT<br><br>Honorable Ronald M. Whyte<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO VERISIGN, INC.'S MOTION TO DISMISS CFIT'S THIRD AMENDED COMPLAINT**<br><br>DATE:   February 4, 2011<br>TIME:   9:00 a.m.<br>CTRM.:  "6" – 4th Floor, San Jose<br><br>DISC. CUT-OFF:   June 24, 2011<br><br>TRIAL DATE:   December 5, 2011 |

///

///

///

///

///

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND OVERVIEW ...................................................................................1

II.  ARGUMENT........................................................................................................................1

    A.    All Factual Allegations In The Complaint Must Be Accepted As True ..................1

    B.    CFIT Has Standing To Pursue the Present Action...................................................2

    C.    Amendment in Name of Real Parties in Interest. ....................................................4

    D.    CFIT Has Stated Claims for .NET............................................................................7

    E.    Disgorgement is a Proper and Time-Honored Remedy..........................................9

    F.    The Court Should Empanel a Jury .........................................................................11

III.  CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*Ashcroft v. Iqbal*,
__ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................................... 1, 7, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................................................... 1, 7, 8

*Blue Shield of Virginia v. McCready*,
457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) ............................................................... 9, 10

*Branick v. Downey Sav. and Loan Ass'n*,
39 Cal.4th 235, 138 P.3d 214, (Cal., 2006) ................................................................................. 4, 5, 6

*California v. American Stores Co.*,
495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed. 2d 240 (1990) ............................................................... 9

*Chandler v. McMinnville School Dist.*,
978 F.2d 524 (9th Cir. 1992) ........................................................................................................ 2

*Church of Scientology of California v. Flynn*,
744 F.2d 694 (9th Cir. 1984) ........................................................................................................ 2

*Clayworth v. Pfizer, Inc.*,
49 Cal.4th 758, 233 P.3d 1066 (Cal. 2010) ................................................................................ 10

*Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.*,
611 F.3d 495 (9th Cir. 2010) ........................................................................................................ 1

*Committee Concerning Community Imp. v. City of Modesto*,
2011 WL 9635, 1 (E.D.Cal., 2011) .............................................................................................. 3

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................................................ 1

*County of Riverside v. McLaughlin*,
500 U.S. 44, 111 S.Ct. 1661, (1991) ............................................................................................ 5, 6

*DeLoach v. Lorillard Tobacco Co.*,
391 F.3d 551 (4th Cir. 2004) ........................................................................................................ 8

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir.1986) ..................................................................................................... 4, 5

*Experimental Engineering, Inc. v. United Technologies Corp.*,
614 F.2d 1244 (9th Cir. 1980) ..................................................................................................... 2

*F. Hoffmann-La Roche Ltd v. Empagran S.A.*,
542 U.S. 155, 24 S. Ct. 2359, 159 L. Ed. 2d 226 (2004); ............................................................ 8

ii

CFIT'S OPPOSITION TO MOTION TO DISMISS
THIRD AMENDED COMPLAINT
2072290.1

Case No. 5:05-CV-04826-RMW

# TABLE OF AUTHORITIES

Page(s)

*First Am. Title Ins. Co. v. Provident Savings Bank*,
848 F.2d 969 (9th Cir. 1988) ............................................................................................... 2

*Foundation For Taxpayer And Consumer Rights v. Nextel Communications, Inc.*,
143 Cal.App.4th 131, 48 Cal.Rptr.3d 836 (Cal.App. 2 Dist., 2006) ................................... 4

*FTC v. Mylan Laboratories, Inc.*,
62 F.Supp.2d 25 (D.C. Dist. 1999) ................................................................................ 9, 10

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) ....................................................... 9

*Hansen v. Safeway, Inc.*,
2010 WL 2593611, 2 (N.D.Cal., 2010) ............................................................................ 11

*Harkins Amusement Enterprises, Inc. v. General Cinema Corp.*,
850 F.2d 477 (9th Cir. 1988) ............................................................................................... 8

*In re Multidistrict Vehicle Air Pollution*,
538 F.2d 231 (9th Cir. 1976) ......................................................................................... 9, 10

*Jensen v. Royal Pools*,
48 Cal.App.3d 717 (1975) ............................................................................................... 4, 5

*Klarfeld v. United States*,
944 F.2d 583 (9th Cir. 1990) ............................................................................................... 2

*Kramer v. Banc of Am. Sec. LLC*,
355 F.3d 961 (7th Cir.2004) .............................................................................................. 11

*Kruman v. Christie's Int'l PLC*,
284 F.3d 384 (2nd Cir. 2002) .............................................................................................. 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ............................................................................................. 3

*Owens v. First Family Financial Services, Inc.*,
379 F.Supp.2d 840 (2005) ................................................................................................. 11

*Shapley v. Wolff*,
568 F.2d 1310 (9th Cir. 1978) ............................................................................................. 2

*State of California v. Levi Strauss & Co.*,
41 Cal.3d 460, 715 P.2d 564 (Cal.1986) ........................................................................... 10

*U.S. v. Romer*,
148 F.3d 359 (4th Cir. 1998) ............................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

Code of Civil Procedure § 473(a)(1) ................................................................................................ 4

**Other Authorities**

5 Witkin, Cal. Procedure (4th ed. 1997)
  Pleading, § 1126, p. 581; id., § 1155, p. 614 .................................................................................. 5

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................................ 1, 3

Federal Rules of Civil Procedure Rule 39(b) ................................................................................. 11

Federal Rules of Civil Procedure Rule 39(c)(1) ............................................................................. 11

1  **I.      INTRODUCTION AND OVERVIEW**

2         The present motion to dismiss immediately follows a decision of the United States Court of

3  Appeals holding that Plaintiff Coalition for ICANN Transparency ("CFIT") had adequately stated

4  claims for relief on all but its claims related to the .NET top-level domain. *See*, *Coalition For ICANN*

5  *Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495 (9th Cir. 2010). Nevertheless, determined never to

6  admit or deny any factual allegation until it is ordered to do so, Defendant Verisign, Inc. ("Verisign")

7  again moves to dismiss, not only on the newly restated .NET allegations but also on standing and the

8  remedies sought by CFIT. Verisign's arguments are without merit, and now is the time for the Court

9  to deny the motion to dismiss and set a date by which Verisign must admit or deny the detailed

10 allegations in CFIT's Third Amended Complaint ("TAC").

11        In this Opposition, CFIT will demonstrate that it has pleaded sufficient facts to bring this

12 action. At best, Verisign's standing argument rests on a technicality that CFIT sought to cure even

13 before Verisign filed its motion to dismiss. CFIT's new .NET allegations are consistent with the level

14 of pleading acknowledged by the Court of Appeals as meeting the U.S. Supreme Court's twin pleading

15 standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

16 and *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and describe a classic

17 antitrust bid-rigging case. For its remedies, contrary to the claims made by Verisign, the U.S. Supreme

18 Court has acknowledged that the antitrust laws can only be served when a defendant is required to

19 disgorge the fruits of its unlawful activity; the cases cited by Verisign stand only for the proposition

20 that plaintiff cannot have a double recovery. Finally, CFIT desires a jury trial, whether by right or by

21 the exercise of this Court's discretion, which CFIT believes is warranted here.

22        For the reasons stated below, Verisign's motion should be denied.

23 **II.     ARGUMENT**

24      **A.      All Factual Allegations In The Complaint Must Be Accepted As True**

25        The conditions that must be met before a motion may be granted under Federal Rules of Civil

26 Procedure Rule 12(b)(6) are quite strict. "[A] complaint should not be dismissed for failure to state a

27 claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

28 which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1  In applying this standard, the court must treat all of the allegations in the complaint as true. *Id.*; *see also* *Klarfeld v. United States*, 944 F.2d 583, 585 (9th Cir. 1990) (holding that district court erred in granting motion to dismiss because whether plaintiff's fourth amendment rights were violated by the requirement that he walk several yards over a dirty floor was a question of fact); *Chandler v. McMinnville School Dist.*, 978 F.2d 524, 527 (9th Cir. 1992) (district court erred in granting motion to dismiss in freedom of expression case where factual questions existed on what conduct at school could be deemed "inherently disruptive"); *Experimental Engineering, Inc. v. United Technologies Corp.*, 614 F.2d 1244 (9th Cir. 1980) (district court erred in dismissing complaint when it could not be said that it appears beyond doubt that appellant could prove no set of facts in support of his claim); *Shapley v. Wolff*, 568 F.2d 1310 (9th Cir. 1978) (holding that district court erred in dismissing complaint because it could not be said that it appears beyond doubt that appellant could prove no set facts in support of his claim); *First Am. Title Ins. Co. v. Provident Savings Bank*, 848 F.2d 969 (9th Cir. 1988) (holding that district court erred in granting motion to dismiss in lien case claim because appellant might have proven that it perfected its bank lien before government recorded its tax lien); *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984) (holding that district court erred in granting motion to dismiss in defamation because whether statement was an "opinion" was a question of fact).

These time honored standards support the denial of Verisign's motion here.

**B.  CFIT Has Standing To Pursue the Present Action**

The only difference between the allegations regarding the identity of CFIT in the Second Amended Complaint ("SAC"), which this Court approved, and the TAC is the omission of the names of certain members. The TAC errantly omitted the names of new CFIT members, Name Administration, Inc., a company holding over 250,000 domain names, and iRegistry Corp., an ICANN-accredited domain name registrar. These names have been provided to Verisign during discovery. Both companies were members of CFIT at the time that counsel sought leave to file the TAC. Upon becoming aware of the perceived deficiency, CFIT promptly sought to address the issue with a correction. *See*, Docket Nos. 240 and 255.

CFIT is a membership organization. Like any membership organization, its membership has changed over time. Throughout that time, however, CFIT has continued to persevere, taking the case,

at great expense, to the Ninth Circuit Court of Appeals, successfully opposing a motion for rehearing, and now returning to this Court to again litigate the important issues raised in its TAC. The fact that a member has withdrawn from CFIT since the time the original complaint was filed five years ago does not change the fact that Verisign has unlawfully monopolized the markets for .COM and .NET domain names. This case should not turn on a "gotcha"-style procedural point, but on the merits of the pleaded claims.

Had Verisign addressed the standing issue with counsel by meet and confer, the desired corrections could have been made without judicial assistance. Instead, Verisign has used overheated rhetoric to accuse CFIT and its counsel of "misrepresentation" and "disregard" for court orders. It makes these exaggerated claims at the same time it pretends to ignore the known facts: CFIT has disclosed, both in discovery and in earlier filed pleadings, the names of members who satisfy *the same standing requirements* as those who have withdrawn.

If Verisign is allowed to ignore facts disclosed in discovery and insist that these known facts go into the TAC, then CFIT has requested the opportunity to correct or amend its TAC. The case law supports CFIT. "In a line of cases stretching back nearly 50 years, courts have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotations omitted) <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, CFIT has the facts necessary to state its claim for standing. It has provided those facts to Verisign in discovery. This is not a situation in which no set of facts can be stated – it is simply a situation in which Verisign demands the formality of having facts known to it in discovery be inserted into the TAC. This is not the sort of pleading infirmity which should cause this Court to dismiss the TAC without leave to amend. Courts allow motions to dismiss with leave routinely and afford litigants multiple opportunities – fourth amended complaints in many instances- to plead facts that will allow resolution of cases on their merits. <u>See</u>, <u>Committee Concerning Community Imp. v. City of Modesto</u>, 2011 WL 9635, 1 (E.D.Cal.,2011) (permitting five versions of the complaint and denying motions to dismiss fourth amended complaint.)

///

3

### C. Amendment in Name of Real Parties in Interest.

Long standing federal rules favor resolution of cases based on their merits and legal precedent encourages court decisions that support such outcomes. <u>See</u>, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986). Even if the Court determines that CFIT does not have standing to sue, the Court should permit CFIT to amend the pleading to add the names of its members who are real parties in interest.

The facts and causes of action plead against Defendant, whether brought by CFIT or its individual members, present identical legal obligations for Defendant. Under such circumstances, Courts allow routinely litigants to amend pleadings to identify the proper parties needed to resolve cases on their merits.  Code of Civil Procedure section 473(a)(1) provides in pertinent part that "[t]he court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding…the name of any party, or by correcting a mistake…in any other respect." "In general, courts liberally allow amendments for the purpose of permitting plaintiffs who lack or have lost standing to substitute as plaintiffs the true real parties in interest." <u>Foundation For Taxpayer And Consumer Rights v. Nextel Communications, Inc.</u>, 143 Cal.App.4th 131, 136, 48 Cal.Rptr.3d 836, 839 (Cal.App. 2 Dist., 2006); <u>see also</u>, <u>Branick v. Downey Sav. and Loan Ass'n</u>, 39 Cal.4th 235, 243-244, 138 P.3d 214, 218-219 (Cal., 2006).

In this case, Defendant argues that CFIT lacks standing to bring this action, or has lost standing since this Court ruled to the contrary in its earlier decision.  (*See* Defendant's Motion to Dismiss Plaintiff CFIT's TAC ("Defendant's Motion") p. 11, §B.)  CFIT disputes this argument for the reasons stated above.  However, even if CFIT's standing is questioned, the Court should allow CFIT to amend its pleading to name its members as real parties in interest. Courts considering this issue permit routinely amendment of pleadings to name real parties in interest with proper standing.

In *Jensen v. Royal Pools*, 48 Cal.App.3d 717 (1975), a case decided under the California State rules, the court considered analogous circumstances where an association of condominium owners lacked standing to sue to recover damages arising out of building defects on community property. In that case the original complaint was amended to substitute condominium owners as party plaintiffs. The allegations in the amended complaint were the same as the allegations in the condo association's original complaint.  The court deemed the amended complaint filed as of date of original complaint for

4

1    purposes of the statute of limitations. *Id*.  Here, CFIT brings various claims against Defendant on

2    behalf of its members much like the condominium owner's association in Jensen. When defendants

3    challenged the standing of the condominium association the court in Jensen allowed the association to

4    amend its complaint to add the names of the real parties in interest- individual condo owners – and to

5    resolve the case on its merits. *Id*.  Similarly, if the Court herein determines that CFIT cannot stand in

6    the place of its members, this Court should allow CFIT to name its members as real parties in interest,

7    and resolve this case on its merits.

8         Allegations that CFIT lacks standing to prosecute this case on behalf of its members form the

9    backbone Defendant's Motion.  However, even if the Court determines that Defendants argument has

10   merit, which CFIT contests, dismissal should not follow.  CFIT can amend its pleading to name its

11   members as real parties in interest, and this Court can resolve this case on its merits in accordance with

12   established legal president.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986); *Branick v.*

13   *Downey Sav. and Loan Ass'n*, 39 Cal.4th 235, 243, 138 P.3d 214, 218-219 (Cal., 2006).

14        In *Branick, supra*, defendants argued that the court should not permit plaintiffs to substitute a

15   new plaintiff because the failure to name the new plaintiff in their original complaint was not a

16   mistake.  However, the court noted that no such rule exists. *Id*. at 1471-1472. "To the contrary, courts

17   have permitted plaintiffs who have been determined to lack standing, or who have lost standing after

18   the complaint was filed, to substitute as plaintiffs the true real parties in interest. *Id*.  (internal citations

19   omitted); *see* 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1126, p. 581; *id*., § 1155, p. 614.

20        Indeed, the U.S. Supreme Court adopts this same reasoning in similar circumstances involving

21   class action lawsuits.  The Court has held that the termination of a representative's claim does not moot

22   the claims of the unnamed members or real parties in interest.  *County of Riverside v. McLaughlin*, 500

23   U.S. 44, 51-52, 111 S.Ct. 1661, 1667 (1991).  If the claims of the representative fail because of

24   standing, become moot, or falter for other reasons, the claims of the represented group do not

25   necessarily fall by the wayside.  *Id*.  Real parties in interest may join litigation through amendment of

26   pleadings and prosecute the claims on their merits. *Id*.; *Branick v. Downey Sav. and Loan Ass'n*, 39

27   Cal.4th 235, 243, 138 P.3d 214, 218-219 (Cal., 2006); *Jensen v. Royal Pools*, 48 Cal.App.3d 717

28   (1975).

5

CFIT'S OPPOSITION TO MOTION TO DISMISS                                Case No. 5:05-CV-04826-RMW
THIRD AMENDED COMPLAINT
2072290.1

1   Here, CFIT brings this action to redress harm caused by Defendant to its members. (TAC ¶¶ 1-
2   10.) Defendant challenges CFIT's standing. However, "[a]t the core of the standing doctrine is the
3   requirement that a plaintiff allege personal injury fairly traceable to the defendant's allegedly unlawful
4   conduct and likely to be redressed by the requested relief." *County of Riverside v. McLaughlin*, 500
5   U.S. 44, 51, 111 S.Ct. at 1667 (1991).  While the harm caused by Defendant is "fairly traceable" to
6   CFIT, Defendants unlawful conduct caused direct and quantifiable harm to the members of CFIT.
7   Defendant cannot argue in good faith that CFIT's members do not have standing to sue on the basis
8   alleged in the TAC.  Even if Defendant succeeds in challenging CFIT's standing to bring this lawsuit,
9   this Court should permit an amendment of the operative pleading to name CFIT's members as real
10  parties in interest.

11  In order for the Court to allow amendment of the pleading to include members of CFIT, the
12  newly added plaintiffs may not state facts which give rise to a wholly distinct and different legal
13  obligation against Defendant. *Branick v. Downey Sav. and Loan Ass'n*, 39 Cal.4th 235, 243-244
14  (Cal.,2006).  "[I]n determining whether a wholly different cause of action is introduced by the
15  amendment technical considerations or ancient formulae are not controlling; nothing more is meant
16  than that the defendant not be required to answer a wholly different legal liability or obligation from
17  that originally stated." *Id*.

18  The amendment proposed by CFIT as an alternative to dismissal would not expand the basis or
19  scope of this case or enlarge the claims against which VeriSign must defend. Whether prosecuted by
20  CFIT or its members, this action seeks to restore competitive conditions in markets for ".COM" and
21  ".NET" Internet domain names.  Indeed, both CFIT and its members can prove that the unlawful
22  schemes and agreement described in the TAC give Verisign a permanent monopoly over all the
23  ".COM" and ".NET" domain name registrations and permits Verisign to increase prices above the fair
24  market price in a normally competitive market.  (*See* TAC ¶¶ 1-10.)  Whether prosecuted by CFIT or it
25  members individually, the facts plead and causes of action remain the same.

26  Based on the foregoing, CFIT urges this Court respectfully to deny Defendant's Motion in its
27  entirety or, alternatively, afford CFIT the opportunity to amend its pleading to name its members as
28  real parties in interest.

6

### D. CFIT Has Stated Claims for .NET

In its motion, Verisign cites the newest .NET allegations of CFIT's TAC (¶¶223-225), quotes them by themselves, and then analyzes only those new allegations against *Twombly* and *Iqbal* as though the three paragraphs stand alone as a separate complaint. They do not. Importantly, Verisign omits any discussion of the Complaint's history of Verisign's dealings with ICANN, which provide the context for the claims, and even omits the two preceding paragraphs (¶¶221-222) to the ones it quoted, both of which relate specifically to the market for .NET domain names:

> 221. Verisign also used its litigation with ICANN and the confidential settlement negotiations attendant to that litigation to obtain an unfair competitive advantage in its 2005 bid to operate the .NET registry.
>
> 222. In its settlement negotiations for .COM, which preceded the submission of competitive bids for .NET, Verisign learned of material changes in ICANN's registry contractual terms, including the release of price caps and changes in the approval process for new registry services, that allowed Verisign to submit a more competitive bid for .NET than it could have had it been subject to the rules applicable to other bidders.
>
> 223. Verisign used its leverage over ICANN to obtain an unfair commercial advantage in the bidding for the .NET registry contract. Verisign coerced ICANN into creating a bidding process for .NET that Verisign was certain to win. ICANN and Verisign thus conspired to provide Verisign undue and unfair advantage in the .NET rebid process. ICANN specifically added judging criteria requested by VeriSign by which Verisign alone would measure favorably. ICANN altered and downplayed evaluation criteria requested by the public by which Verisign would have measured unfavorably. ICANN specifically rejected evaluation criteria detrimental to VeriSign despite requests by the public to do so on legitimate public policy grounds.
>
> 224. To further ensure that Verisign was awarded the .NET contract, ICANN selected as a supposedly "independent" evaluator, Telcordia Technologies, Inc. ("Telcordia"). At the time of Telcordia's selection, Telcordia was a wholly owned subsidiary of Science Applications International Corporation ("SAIC"), a predecessor in interest to Verisign and

1  which, just a few years earlier, had been a major shareholder in Verisign. At the time of the
2  "independent" evaluation, a Corporate Executive Vice President for Telcordia's parent
3  company, SAIC, was a sitting director of VeriSign.

4  225.   The stacked evaluation criteria coupled with an evaluator with extensive ties
5  to Verisign ensured that Verisign would win the .NET rebid. Verisign was not the qualified
6  bidder with the lowest price bid (based on proposed per domain name registration costs), and
7  a more fair evaluation process untarnished by Verisign's unlawful influence would have
8  resulted in an award of .NET to a different bidder, with lower overall .NET registration costs
9  to consumers.

10 The theory articulated is clear. Through a course of dealing that began in 1999 (TAC, at ¶137),
11 Verisign has sought to undermine ICANN, increase that non-profit corporation's costs and burdens,
12 and threaten its very survival. TAC, at ¶¶201-207. Through these actions, it coerced ICANN into
13 entering an anticompetitive agreement for the administration of the .COM top-level domain (TAC, at
14 ¶¶198-200), and the discussions around that agreement also extended to a gamed rebid of the .NET
15 top-level domain (TAC, at ¶¶221-225).

16 Gamed processes for the supposedly competitive award of a lucrative contract are classic
17 antitrust fact patterns. *See*, *e.g.*, *Harkins Amusement Enterprises, Inc. v. General Cinema Corp.*, 850
18 F.2d 477 (9th Cir. 1988) (bid rigging in the distribution of motion pictures to individual movie
19 theaters); *DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 554 (4th Cir. 2004) (describing tobacco
20 growers claim that manufacturers had conspired to rig tobacco auctions); *Kruman v. Christie's Int'l*
21 *PLC*, 284 F.3d 384, 390-91 (2nd Cir. 2002) (describing how "policies and procedures" established by
22 auction houses harmed consumers), *partially overruled on other grounds* by *F. Hoffmann-La Roche*
23 *Ltd v. Empagran S.A.*, 542 U.S. 155, 24 S. Ct. 2359, 159 L. Ed. 2d 226 (2004); *U.S. v. Romer*, 148
24 F.3d 359, 363-64 (4th Cir. 1998) (describing how real estate speculators gamed auctions by "bid-
25 rigging").

26 The .NET claims incorporate many of the common allegations noted by the Ninth Circuit in its
27 decision in this case. As the Court found on those allegations, as they pertained both to the .COM
28 market and the market for expiring domain names, CFIT has met the standards of *Twombly* and *Iqbal*.

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1  Moreover, many of the allegations in the TAC are allegations that Verisign acted in non-public,
2  fraudulent ways (TAC, at ¶205) to coerce ICANN's agreement to the contracts at issue.  The
3  conspiracy described between Verisign and ICANN was not made in public. While some of the
4  activities are known and described, many are purposefully secret. The pleading rules cannot require a
5  plaintiff to plead in detail that which the defendant has tried to keep secret. By the proper measures,
6  including those set out by the Ninth Circuit in this case, CFIT has stated claims relating to the market
7  for .NET domain names.

        **E.**        **Disgorgement is a Proper and Time-Honored Remedy**

9  Disgorgement is a traditional remedy, including in antitrust cases.  Disgorgement as an
10 antitrust remedy furthers the very purposes of the federal and state antitrust laws.  In *Blue Shield of*
11 *Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), the United States
12 Supreme Court noted that disgorgement furthered the "basic objectives of the private enforcement
13 scheme" of the federal antitrust laws: "Only by requiring violators to disgorge the 'fruits of their
14 illegality' can the deterrent objectives of the antitrust laws be fully served." 457 U.S. at 473, n. 10,
15 *citing*, *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 494, 88 S.Ct. 2224, 2232,
16 20 L.Ed.2d 1231 (1968). This unequivocal statement stands in stark contrast to Verisign's claim that
17 "no court in the 120 year history of the Sherman Act has ever found disgorgement to be available to a
18 private litigant."

19 In support of its sweeping assertion, Verisign cites only two cases for the proposition that
20 disgorgement is not a remedy under the federal antitrust laws, *In re Multidistrict Vehicle Air Pollution*,
21 538 F.2d 231 (9th Cir. 1976) and *FTC v. Mylan Laboratories, Inc.*, 62 F.Supp.2d 25 (D.C. Dist. 1999).
22 Both cases are inapposite for reasons set forth in *Mylan*.  Both cases involved claims for damages and
23 for restitution, not disgorgement as a primary remedy.  The *Mylan* Court discussed both the Ninth
24 Circuit's 1976 decision in *In re Multidistrict Vehicle Air Pollution* and the U.S. Supreme Court's
25 decision in *California v. American Stores Co.*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed. 2d 240 (1990),
26 and it found that the cases precluded a plaintiff from multiple recoveries.  *See*, *Mylan*, 62 F.Supp.2d at
27 40-42.  In other words, where a plaintiff's damages were the same as the recovery it would have
28 received via restitution, the plaintiff could not recover for both.  In *In re Multidistrict Vehicle Air*

9

1  *Pollution*, the Plaintiffs sought to recover both their costs in purchasing unnecessary automobile
2  retrofits and the Defendant's income derived from the same sales.  Similarly, the *Mylan* plaintiffs
3  sought to recover their damages from excessive drug prices and restitution of the amounts paid in
4  excess of otherwise fair market prices.  Both remedies were simply different ways of describing the
5  same number.  In allowing only the plaintiffs' damages claim to stand, the *Mylan* Court wrote that it
6  was concerned the defendants "could be exposed to multiple liability."

7      *Mylan* specifically left open the situation present here: "….a typical restitution or disgorgement
8  scenario might fit within the contours of §16 [of the Clayton Act], such as where plaintiffs seek to
9  deprive antitrust violators of the benefits of their illegal conduct." *Id*, at 40.  Here, CFIT is seeking to
10  deprive Verisign of the benefits of its unlawful conduct.  As alleged, Verisign's unlawful conduct
11  allowed it to escape a contract that capped .COM domain name prices at $6.00 per year.  *See*, TAC at
12  ¶¶160, 180.  Verisign now charges $7.34 per name.  CFIT is not seeking a double recovery, only to
13  withhold from Verisign the fruits of its unlawful actions.

14      Verisign's motion also ignores CFIT's Fifth Cause of Action brought under California's
15  Cartwright Act.  *See*, TAC, at ¶¶279-289.  In its most recent term, the California Supreme Court
16  examined 1978 amendments to the Cartright Act that followed earlier U.S. Supreme Court's precedent.
17  The Court noted that the Cartwright Act's 1978 amendments addressed "the Legislature's overarching
18  goals of maximizing effective deterrence of antitrust violations, enforcing the state's antitrust laws
19  against those violations that do occur, and ensuring disgorgement of any ill-gotten proceeds." *See*,
20  *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 763, 233 P.3d 1066 (Cal. 2010); *cf*., *State of California v.*
21  *Levi Strauss & Co.*, 41 Cal.3d 460, 472, 715 P.2d 564 (Cal.1986) (in claim for both monetary and
22  equitable relief, Court wrote that "the purposes of the private damages action for violations of the
23  Cartwright Act include disgorgement and deterrence as well as compensation").

24      Disgorgement is a core remedy for illegality such as that alleged by CFIT here.  To hold
25  otherwise would allow CFIT to prove a violation of the antitrust laws while allowing Verisign to retain
26  the unlawful benefits from those violations.  As the Supreme Court noted in *Blue Shield of Virginia v.*
27  *McCready*, such a result would not allow the antitrust laws to be "fully served."
28

### F. The Court Should Empanel a Jury

Pursuant to Federal Rules of Civil Procedure Rule 39(b), even if no demand for a jury trial is made, a court may, pursuant Rule 39(b), order a jury trial on any issue for which a jury might have been demanded. *Hansen v. Safeway, Inc.*, 2010 WL 2593611, 2 (N.D.Cal., 2010). If the Court does not empanel a jury as a matter of right here, CFIT requests the appointment of an advisory jury to decide critical facts regarding its claims.

Federal Rules of Civil Procedure Rule 39(c)(1) provides that "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury." Indeed, this Court "has the discretion, but not the duty, to submit an equitable claim to the jury for a binding verdict." *Hansen v. Safeway, Inc.*, 2010 WL 2593611, 3 (N.D.Cal., 2010) *citing* *Kramer v. Banc of Am. Sec. LLC*, 355 F.3d 961, 968 n. 2 (7th Cir.2004).

CFIT's case against Defendant presents a public issue for resolution by this Court. The decisions made in this case will impact CFIT, its members, and the users who have registered over 100,000,000 .COM and .NET domain names. This Court should consider the public perception of this judicial process. *Owens v. First Family Financial Services, Inc.*, 379 F.Supp.2d 840, 856-857 (2005). The Court's inherent interest in preserving the public trust in our judicial system supports the appointment of an advisory jury to resolve any factual disputes that may arise in this case. FRCP Rule 39(c)(1) empowers this Court to appoint an advisory jury for precisely these circumstances and CFIT encourages this Court to exercise this power to the extent that no jury is required by law.

## III. CONCLUSION

CFIT's member companies encompass both registrars and registrants. The TAC tells the story of Verisign's predatory conduct, its attempts to coerce its regulator into agreement to unlawful operational terms, and the effects that these actions will have on registrars and registrants. It tells the story of a six year effort by Verisign to restrain trade on .COM and a bid-rigging for the bid of the .NET top level domain. This is a story that warrants more complete development through discovery and ultimately that should be placed before a trier of fact at trial. For these reasons, Verisign's motion should be denied.

In the event that the Court believes either that (a) CFIT does not have standing, or (b) disgorgement is not a remedy, then CFIT asks for leave to amend its TAC to restate the claims in the names of the members themselves. Recasting the complaint not in the name of associational standing, but in the name of the members themselves would solve the issues now raised by Verisign.

Respecfully submitted,

DATED:  January 14, 2011

ALVARADOSMITH
A Professional Corporation


By:     /s/ Bret A. Fausett
        BRET A. FAUSETT

        Attorneys for Plaintiff COALITION FOR ICANN TRANSPARENCY INC.

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is ALVARADOSMITH, 633 W. Fifth Street, Suite 1100, Los Angeles, CA 90071.

On **January 14, 2011**, I served the foregoing document(s) described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO VERISIGN, INC.'S MOTION TO DISMISS CFIT'S THIRD AMENDED COMPLAINT** on all interested parties in this action as follows:

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

> Ronald L. Johnston, Esq., Ronald_Johnston@aporter.com
> James F. Speyer, Esq., james.speyer@aporter.com
> Tricia A. Cross, Esq., Tricia_Cross@aporter.com
> Kelly A. Welchans, Esq., kelly.welchans@aporter.com
> ARNOLD & PORTER LLP
> 777 S. Figueroa Street, 44th Floor
> Los Angeles, CA 90071
> Tel.   (213) 243-4000
> Fax.   (213) 243-4199

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 633 W. Fifth Street, Los Angeles, California 90071. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with this firm's practice of collecting and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☒ **BY ELECTRONIC MAIL:** I served the foregoing document by electronic mail to the email address(es) listed on the service list attached.

☒ **BY OVERNIGHT MAIL:** By placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express and/or Overnite Express agent for delivery.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on **January 14, 2011**, at Los Angeles, California.

_____
Liliana R. Hernandez

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*
USDC N.D. Case No. 5:05-cv-04826-RMW
2068228.1

PROOF OF SERVICE