**E-FILED on** 2/11/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COALITION FOR ICANN TRANSPARENCY INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>VERISIGN, INC., a Delaware corporation,<br><br>            Defendant. | No. 05-CV-04826 RMW<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>**[Re Docket Nos. 255, 257]** |

Defendant VeriSign, Inc. moves to dismiss plaintiff Coalition for ICANN Transparency, Inc.'s ("CFIT") Third Amended Complaint for lack of standing, for failure to plead facts sufficient to support its claim of .net registry Sherman Act violations, for impermissibly seeking retrospective equitable relief, and for asserting a demand for a jury trial to which it is not entitled. CFIT moves for leave to correct or amend paragraph 16 of its Third Amended Complaint ("TAC") to add the names of two financial supporters. For the reasons set forth below, the court grants VeriSign's motion to dismiss with leave to amend with respect to standing and VeriSign's activities in the .net registration market and without leave to seek a disgorgement remedy or a jury trial. The court denies CFIT's motion to amend paragraph 16 of its TAC without prejudice.

# I. BACKGROUND

## A. The Players

Plaintiff CFIT is a nonprofit membership organization purportedly composed of participants in the Internet domain name system, including domain name registrars and owners of domain names. CFIT alleges that it has members who have an interest in ensuring that conditions in the domain name registration market remain fair and competitive.

The Internet Corporation for Assigned Names and Numbers ("ICANN") is a nonprofit oversight body created in 1998 in response to a policy directive of the Department of Commerce to administer the domain name system on the Department's behalf. ICANN is charged by the Department of Commerce with selecting and entering into agreements with registry operators.

VeriSign is a corporation that acts as the sole operator of the ".com" and ".net" domain name registries. VeriSign operates each registry pursuant to a contract with ICANN. Pursuant to these contracts, VeriSign is entitled to charge a certain price for registering each domain name. VeriSign has managed the definitive databases of registered .com and .net domain names since 2001, prior to which its predecessor-in-interest, Network Solutions, Inc. ("NSI"), managed the databases.

## B. Procedural History

On November 28, 2005, CFIT filed its complaint against VeriSign and former defendant ICANN. The original complaint alleged that the contracts between VeriSign and ICANN violated federal and state antitrust and tort laws, including Sections 1 and 2 of the Sherman Act.

In the original complaint, CFIT did not identify its purported members by name, but alleged that "[m]embers of CFIT include certain Internet domain name registrars, registrants, back order services providers, and other Internet stakeholders." Compl. ¶ 7. VeriSign and ICANN answered the complaint on December 19, 2005. On February 28, 2006, the court denied VeriSign's motion to dismiss the complaint but granted VeriSign's motion for judgment on the pleadings. It found that CFIT lacked associational standing to sue on behalf of its members because it failed "to identify a single member of CFIT" and instead referred only to "vague categories of members . . . ." The court explained that CFIT's "single cryptic sentence about its members' identities" was insufficient, and

that CFIT's membership was "shrouded in mystery."  CFIT was given ten days leave to amend. Only the unfair competition claim was dismissed with prejudice.

On March 14, 2006, CFIT filed its First Amended Complaint ("FAC"), alleging violations of Sections 1 and 2 of the Sherman Act and conspiracy in restraint of trade in violation of the Cartwright Act.  CFIT alleged that its "members include Internet domain name registrars, registrants, and back order service providers, including, but not limited to Pool.com, Inc. ("Pool.com") and R. Lee Chambers Company LLC."  On December 8, 2006, the court granted VeriSign's motion to dismiss the FAC with 20 days leave to amend.  With respect to standing, the court explained that "associational standing has not been properly alleged for a domain name registration market.  CFIT has not alleged that its members include any competing registry operators or registrars."

On December 28, 2006, CFIT filed its Second Amended Complaint ("SAC"), again alleging violations of Sections 1 and 2 of the Sherman Act and conspiracy in restraint of trade in violation of the Cartwright Act.  CFIT alleged that:

> CFIT's [sic] has received financial support for this litigation from Internet domain name registrars and back order service providers, including but not limited to Pool.com, Inc. ("Pool.com"), Momentous, Inc. ("Momentous"), and R. Lee Chambers Company, LLC (hereinafter referred to collectively as "CFIT's Supporters"). . . .
>
> CFIT's list of members produced to Defendant Verisign includes that names of CFIT's financial supporters as well as the names of domain name registrants, including but not limited to the World Association of Domain Name Developers ("WADND") (hereinafter referred to collectively as "CFIT's Supporters") and other individuals and companies that, collectively, have registered tens of thousands of domain names in the .COM and .NET registries.

(SAC ¶¶ 17-19.)

On May 14, 2007, the court granted VeriSign's motion to dismiss the SAC, dismissing all of CFIT's claims with prejudice but not on the grounds of lack of standing.  The standing allegations were deemed sufficient because CFIT had alleged what the functions of registrars and back order service providers were, that R. Lee Chambers was a member of CFIT and that R. Lee Chambers was both a registrar and a back order service provider.

CFIT appealed the dismissal to the Ninth Circuit.  The Court of Appeals held that CFIT had adequately alleged claims under Sections 1 and Section 2 of the Sherman Act with respect to the

.com market, that CFIT did not state claims with respect to the .net market under Section 1 and Section 2 of the Sherman Act, and that a separate relevant market exists for expiring domain names. *CFIT v. VeriSign, Inc.* 611 F.3d 495, 509 (9th Cir. 2010).  The Court of Appeals reversed and remanded for further proceedings, finding that violations of Sections 1 and 2 of the Sherman Act had been alleged with respect to the .com market and that CFIT should be given the opportunity to amend its claims regarding the .net market but that the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) would have to be met.

CFIT filed a motion for leave to file a TAC on November 12, 2010 to which VeriSign filed a statement of non-opposition.  CFIT then filed a motion to amend its TAC "nunc pro tunc" by adding the names of two financial supporters of CFIT.  The court granted the motion to allow the TAC as originally filed but denied without prejudice on procedural grounds the "nunc pro tunc" motion to amend.  CFIT then re-noticed its motion to amend the TAC for hearing at the same time as VeriSign's motion to dismiss.

## II.  ANALYSIS

### A.    "Nunc Pro Tunc" Motion to Amend Third Amended Complaint

Since the motion to dismiss the TAC is being granted with leave to amend, the court denies without prejudice the re-noticed motion to amend the TAC.  Since CFIT can amend its original TAC to attempt to adequately allege standing, no purpose would be served by granting the motion to amend the TAC.  CFIT can address the standing issue in a Fourth Amended Complaint by naming members as required to meet the associational standing requirements.  *See infra.*

### B.    Associational Standing

The standing requirement ensures that federal courts hear only actual cases or controversies under Article III of the United States Constitution.  An association has "organizational standing" if it seeks to redress an injury that it personally suffers.  *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 n.1 (1979).  CFIT does not claim standing on this ground.  Rather, it invokes the doctrine of "associational standing" to bring a complaint "on behalf of its members."  *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988).  That doctrine requires "(a) its members

ORDER GRANTING MOTION TO DISMISS—No. 05-CV-04826 RMW
MEC                                         4

would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).[1] In other words, CFIT "must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

CFIT alleges that its purpose is "to promote the interests of its member businesses by seeking a competitive and fair market for domain name registry services," and that it was formed for the purpose of challenging the anticompetitive agreements and activities of VeriSign, including the 2006 .com agreement. TAC ¶¶ 14-15. CFIT purports to bring this action on behalf of its members. CFIT alleges that it has "received financial support for this litigation from Internet domain name registrars, such as iRegistry Corp. (http://www.iregistry.com/), and domain name registrants, such as Name Administration, Inc. (http://www.namedia.com/), that, collectively, have registered hundred of thousands of domain names in the .COM and .NET registries." TAC ¶ 16. CFIT alleges that its list of members "continues to evolve and grow," and that it has provided a list of members to VeriSign in discovery.

VeriSign argues that the proposed amended TAC identifies iRegistry Corp. and Name Administration, Inc. as financial supporters of CFIT, but not as *members* of CFIT. VeriSign also argues that CFIT has failed to demonstrate that it had standing at the time this litigation began, as jurisdictionally required.

When a defendant moves to dismiss on standing grounds, the court must "accept as true all material allegations of the complaint, and . . . construe [it] in favor of the complaining party. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988). Nonetheless, "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (plurality opinion) (internal citations and quotation marks omitted). The court cannot find that the TAC properly alleges

---

[1] The requirement is not that each of the organization's members have standing, but that "at least one of its members would have standing to sue in his own right." *GrassRoots Recycling Network, Inc. v. U.S. E.P.A.*, 429 F.3d 1109, 1111 (D.C. Cir. 2005).

ORDER GRANTING MOTION TO DISMISS—No. 05-CV-04826 RMW
MEC                                    5

1  standing. Unlike the SAC, nothing in the TAC connects financial supporters of CFIT's litigation efforts
2  to membership in CFIT for purposes of finding associational standing. The TAC never alleges that
3  financial supporters are members of CFIT, and it provides no facts that would allow a connection to be
4  drawn between financial supporters and members of CFIT. By failing to identify its purported members,
5  CFIT has made it impossible to determine whether the members are participants in the alleged relevant
6  markets, or whether they have suffered antitrust injury. Because the TAC identifies no members of
7  CFIT, it must be dismissed.

8  In addition, the TAC fatally fails to allege facts showing that iRegistry or Name Administration
9  were financial supporters or members at the time the complaint was filed in 2005. A party must have
10 standing at the outset of a case and at all time throughout the litigation. *See, e.g., Smith v. Univ. of*
11 *Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000) (plaintiff must have a personal interest in the
12 litigation at the time it is filed and throughout the litigation). CFIT's standing allegations must
13 demonstrate, among other things, that at the time of filing of its original filing that it had members in
14 the relevant market who suffered antitrust injury. Standing, of course, must continue to exist throughout
15 the litigation.

16 CFIT cites cases that address California state court procedure, not federal jurisdiction, and a
17 federal case that involved amendments to accommodate "inherently transitory" claims of certain class
18 representatives that always expired prior to a ruling on class certification. *See County of Riverside v.*
19 *McLaughlin*, 500 U.S. 44, 51-52 (1991). CFIT must demonstrate standing under federal law and that
20 standing existed at the time of filing of the original complaint.

21 **C.     Sufficiency of ".net" Allegations**

22 On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure
23 12(b)(6), all allegations of material fact must be taken as true and construed in the light most
24 favorable to CFIT. *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir.
25 2009) (per curiam). "On a motion to dismiss an antitrust case, a court must determine whether an
26 antitrust claim is 'plausible' in light of basic economic principles." *Id.* (citing *Bell Atl. Corp. v.*
27 *Twombly*, 550 U.S. 544, 556 (2007)). CFIT must therefore plead "enough facts to state a claim to
28 relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

ORDER GRANTING MOTION TO DISMISS—No. 05-CV-04826 RMW
MEC                                6

On appeal, the Ninth Circuit concluded that CFIT had adequately stated facts sufficient to nudge its Section 1 and 2 claims "across with line from conceivable to plausible" with regard to VeriSign's activities in the .com registration market. *Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495, 509 (9th Cir. 2010). But the Court:

> [Could] not reach the same conclusion for the allegations about the .net market. All of the specific allegations of the complaint concerning predatory conduct leading to the pricing and renewal provisions of a contract relate to the 2006 .com Agreement. The complaint, in its present form, contains no allegation that predatory or conspiratorial conduct was involved in the process of reaching the 2005 .net Agreement. CFIT may have viable claims with respect to the .net market, but thee district court will be in a better position to determine whether it does if CFIT is given an opportunity to amend its conclusory allegations to allege more specific conduct or anti-competitive effect. We therefore remand the .net claims so that CFIT may be afforded that opportunity. In considering any possible amendments, the district court is directed to take into account the pleading requirements of the Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

*Id.*

CFIT has since added three paragraphs to the TAC regarding the .net Agreement. TAC 223-225. The question before the court is whether these new allegations, in combination with the allegations previously found to be by themselves inadequate, are sufficient to support CFIT's claims. CFIT now alleges that VeriSign "used its leverage over ICANN to obtain an unfair commercial advantage in the bidding for the .NET registry contract," and that VeriSign "coerced ICANN into creating a bidding process for .NET that Verisign was certain to win." *Id.* at 223. CFIT alleges that ICANN "specifically added judging criteria requested by VeriSign by which Verisign alone would measure favorably," "altered and downplayed evaluation criteria requested by the public by which VeriSign would have measured unfavorably," and "specifically rejected evaluation criteria detrimental to VeriSign despite requests by the public to do so on legitimate public policy grounds." CFIT also alleges that ICANN purported to use used a supposedly independent evaluator, Telcordia Technologies, Inc., which was in fact a wholly owned subsidiary of Science Applications International Corporation, a predecessor in interest to VeriSign and former major shareholder in VeriSign. A corporate executive vice president for Science Applications International Corporation was allegedly a sitting director of VeriSign at the time of the evaluation. Finally, CFIT alleges that "Verisign was not the qualified bidder with the lowest price bid (based on proposed per domain name registration costs), and a more fair evaluation process untarnished by VeriSign's unlawful

influence would have resulted in an award of .NET to a different bidder, with lower overall .NET registration costs to consumer." *Id.* at 225.

Section 1 of the Sherman Act prohibits "contract[s], combination[s] in the form of trust or otherwise, or conspirac[ies], in restraint of trade or commerce." 15 U.S.C. § 1. To state a claim under Section 1, a plaintiff is required to allege facts that, if true, would prove: (1) the existence of a conspiracy, (2) intention on the part of the co-conspirators to restrain trade, and (3) actual injury to competition. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citing *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)).

With respect to the allegations contained in the SAC, the Court of Appeals found:

> CFIT also attempted to allege a Section 1 violation in connection with the pricing terms in the 2005 .net Agreement. The .net contract imposed an initial price cap of $4.25 per domain name registration, but provided that this cap would expire on December 31, 2006, leaving no price limitation in place. Although this claim involved terms comparable to those in the .com contract, CFIT has not made out a Section 1 violation for the .net pricing agreement. The .net contract was reached as a result of competitive bidding, not conspiratorial action. CFIT's assertion that some terms of the agreement changed after VeriSign's bid was accepted, without allegations of materiality, does not suffice to state a claim for existence of a conspiracy and the intent to restrain trade.

*Coalition For ICANN Transparency*, 611 F.3d at 504-05.

The court finds that CFIT's allegations in its TAC are still "conclusory and not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. CFIT needs to allege more specific predatory or conspiratorial conduct to make it plausible that ICANN "rigged" the bidding process in order to favor VeriSign's bid.

### D. Disgorgement Remedy

The TAC adds a claim that VeriSign disgorge "all per name domain fees [VeriSign] has collected on .com domain name sales in excess of $6.00" and "all per name domain fees [VeriSign] has collected on .net domain names in excess of what the lowest bidder in 2005 .net auction would have charged." TAC, Prayer at 18. Disgorgement is a form of retrospective equitable relief. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998). Such relief is unavailable under Section 16. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976); *FTC v. Mylan*, 62 F. Supp. 2d 25, 41-42 (D.D.C. 1999).

### E. Right to Jury Trial

1    CFIT demands a jury trial on all of its claims. There is no right to a jury trial for the type of
2 equitable relief that CFIT seeks. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959).
3 Nonetheless, CFIT requests that the court award it a jury under Federal Rule of Civil Procedure
4 39(b) or empanel an advisory jury under Rule 39(c), even though it has failed to make a timely jury
5 demand. CFIT has not made a persuasive argument for excusing the tardiness of its jury request.
6 CFIT argues "[t]he Court's inherent interest in preserving the public trust in our judicial system
7 supports the appointment of an advisory jury." But this antitrust case is inherently complex and
8 would present particular challenges to determination by a jury. CFIT's request is denied.

### III.  ORDER

For the foregoing reasons, the court grants VeriSign's motion to dismiss with leave to amend with respect to standing and to VeriSign's activities in the .net registration market and without leave to seek a disgorgement remedy or a jury trial. The court denies CFIT's motion to amend paragraph 16 of it TAC without prejudice.

DATED:  2/11/2011

_____
RONALD M. WHYTE
United States District Judge

ORDER GRANTING MOTION TO DISMISS—No. 05-CV-04826 RMW
MEC                                                                                    9